**Wiga Elizabeth FERRARA, Plaintiff,**

v.

**CIBA–GEIGY CORPORATION, Defendant.**

**No. 78 Civ. 2267 (CES).**

United States District Court, S.D. New York.

Aug. 7, 1981.

---

1. *Sessions v. Kopke, et al,* 479 F.2d 1041 (1973).

Harold M. Weiner, New York City, for plaintiff.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant.

## MEMORANDUM DECISION

STEWART, District Judge.

Plaintiff Wiga Elizabeth Ferrara brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1976) seeking to recover back pay and damages incurred as a result of alleged discriminatory treatment by her former employer, Ciba-Geigy Corporation, and to be reinstated into an appropriate position. A three day non-jury trial was held. This opinion constitutes our findings of fact and conclusions of law.

*The Facts*

Plaintiff graduated from high school and has since taken several business courses. Prior to her employment at Ciba-Geigy, plaintiff worked in a number of clerical positions and assisted in the production department at her last place of employment. Plaintiff's Ex. 7.

Plaintiff commenced her employment at Ciba-Geigy on March 30, 1970 as an accounting clerk at Grade Level 5. She described her duties to consist primarily of reconciling bank accounts and handling

claim registers, journal vouchers, input transfer of records to records retention and related correspondence. Tr. at 5. During her employment at Ciba-Geigy, plaintiff received salary increases of 7.69% in December 1970, 7.14% in January 1972, a promotional increase of 12% in July 1972, an increase of 5.95% in December 1972, a 6.74% increase in 1973, an 8.94% increase in December 1974, and a 7.25% increase in December 1975.

Plaintiff communicated her dissatisfaction with Ciba-Geigy's general approach to affirmative action and with her job classification and lack of advancement to her employer on January 24, 1975 in a letter sent to the Director of Personnel, Frank Sorgie, through the Open-Up Program.[1] Plaintiff's Ex. 88. After reviewing the correspondence between plaintiff and Mr. Sorgie, Charles E. Ziegler, a corporate vice president, wrote to plaintiff and suggested a meeting to discuss possible ways of addressing her dissatisfaction. Plaintiff's Ex. 96. This meeting occurred on May 14, 1975. Ziegler told Mrs. Ferrara then that there was little he could do directly, but he subsequently arranged a meeting with Joseph Keenan, the corporate controller. Tr. at 100. Plaintiff did meet with Keenan, who was very cordial and agreed to look at the job contents of several positions to make them available for women without college degrees. Tr. at 101. Plaintiff expressed her concern about employment discrimination primarily in terms of corporate policy, rather than her individual situation. *See* Plaintiff's Ex. 99.

Plaintiff subsequently requested a meeting with C.J. Benjamin, the manager of accounting, because in December 1975 she received a 7.25% salary increase rather than a promotion. She expressed the view then, as well as at trial, that she was qualified to hold the position of a junior accountant, grade 9. Plaintiff recalled Benjamin to have stated that she would have to diversify her job experience to obtain a promotion and that personnel would have to approve any upgrading. Tr. at 123.

Plaintiff claims that she then took on responsibility for the deposit account and marketable securities to satisfy the requirements for upgrading her position. Keenan's testimony, substantiated by Seltzer and Hayden and not disputed in substance, established that these additional duties involved record keeping and reconciling of additional areas, but no additional knowledge or judgment requiring skills of a junior accountant. Tr. at 323–325. Plaintiff also was offered the responsibility of supervising three people, but turned down the offer because, as she contends, these particular workers were not motivated. Tr. at 244.

During the relevant period, plaintiff applied for four positions within Ciba-Geigy. Tr. at 131, 469. She was found to be qualified for two of those four positions, but was not offered either of those positions.

Plaintiff also testified that during the relevant period she sought a copy of her job description, which she claimed to be an incomplete and inaccurate representation of her duties. The record shows that she did not actually request a copy of her job description until June 23, 1976, eight weeks prior to her resignation. Plaintiff's Ex. 37. She claims that she did not receive a copy of her job description, but was told that the company was in the process of establishing new job descriptions. Tr. at 150. Plaintiff testified that she learned that some of her co-workers received their new job descriptions in July. Tr. at 162. Upon learning of this, plaintiff submitted her letter of resignation on August 9, 1976. *See* Plaintiff's Ex. 144. She testified that she resigned "in despair", that she had been "humiliated enough." Tr. at 162, 165, 227. After Benjamin learned of her resignation, Benjamin called her in and suggested that she reconsider. Dianne Hayden, the personnel representative, informed plaintiff of the benefits

---

1. The Open-Up Program, which was instituted at Ciba-Geigy in January 1975, was a program to improve communication upward in the organizational hierarchy. Employees could write to the coordinator concerning any questions, comments or complaints. This confidential communication would be forwarded anonymously to the appropriate management official, who would then respond to the employee's letter.

she would give up by resigning from her position. Tr. at 495. Plaintiff adhered to her decision to resign.

After plaintiff left Ciba-Geigy, she attempted unsuccessfully to obtain work which satisfied her income and career advancement requirements. Upon learning that she was ineligible for unemployment compensation because she resigned from her position, plaintiff contacted Ziegler to obtain his assistance. Tr. at 42–43. Ziegler offered to and did forward her resumé to the vice-president of a Westchester bank.

Plaintiff also testified that after she submitted her letter of resignation, she met with Mr. Damrau, her supervisor. Plaintiff stated that, in response to her inquiry as to why she was unfairly persecuted, Damrau remarked "you have been seeing Dr. Ziegler so often that we felt you were happier out of the company." Tr. at 537.

*Conclusions of Law*

Plaintiff claims that defendant's failure to promote her and to make her job description available constituted discrimination on the basis of sex, and that Damrau's remark concerning plaintiff's meetings with Ziegler evidences that her resignation resulted from defendant's retaliation.[2] As Judge Friendly noted in *Lieberman v. Gant,* 630 F.2d 60, 62–63 (2d Cir. 1980):

> The starting point when a Title VII plaintiff alleges disparate individual treatment under facially neutral policies is the Supreme Court's analysis in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), which, although a case of alleged racial discrimination, applies equally, with appropriate changes in terms, to discrimination because of sex: "The complainant in a Title VII trial must carry the initial burden . . . of es-

tablishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. [Footnote omitted.]

■ To prove a claim of retaliation under 42 U.S.C. § 2000e–3(a), plaintiff must show that defendant took some adverse employment action because of plaintiff's action taken against perceived employment discrimination. *Whatley v. Metropolitan Atlanta Rapid Transit,* 632 F.2d 1325, 1328 (5th Cir. 1980); *Lieberman v. Gant, supra,* 630 F.2d at 69–70.

■ We find that plaintiff has failed to carry her burden of proving discrimination under Title VII. Our review of the record raises questions as to whether plaintiff made out a prima facie case of discrimination. Plaintiff left her employment with defendant voluntarily. With respect to the four positions for which plaintiff applied, she was possibly qualified for two of them: staff assistant in the legal department and staff assistant in the logistics department of the plastics and additives division. These jobs required aptitude with numbers, clerical experience and "overall business experience." Tr. at 480. Plaintiff was not qualified for the other two positions for which she applied. The staff assistant position in the plastics and additives division required knowledge of the technical terminology of the department, a science background, and experience processing orders. The position of employee relations representative in the

2. The central provision of Title VII, 42 U.S.C. § 2000e–2(a), on which plaintiff principally relies, provides:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individu-

al's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

corporate relations department required experience in several units in the corporation, thorough knowledge of the company, and contacts with outside organizations. Tr. at 485–86. Plaintiff did not have the background or experience required for these positions. *See* Plaintiff's Ex. 7.

With respect to the two positions for which Mrs. Ferrara was qualified, she was not offered a position. However, it does not appear that either of these positions remained open after her rejection. Indeed, all four positions were filled with women.

Even if we were to assume that plaintiff made out a *prima facie* case of discrimination, we would find that the employer met its burden of articulating "some legitimate nondiscriminatory reason for the employee's rejection," *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824, and plaintiff has not shown that the "stated reason for rejection was in fact pretext." *Id.* at 804, 93 S.Ct. at 1825. The individuals hired for the positions at issue, in addition to being members of the protected class, had qualifications which appear to be better suited to the requirements of each of the positions. See Tr. at 469, 473–74, 482–84. In any case, plaintiff has offered no evidence that the employer's decision was not based on legitimate, nondiscriminatory factors and was mere pretext.

██ Plaintiff also challenges defendant's failure to upgrade her job description or to promote her to the position of junior accountant.[3] Plaintiff did not actually request an updated job description until eight weeks before her resignation. Prior to that time, she was given the opportunity to discuss her job description but asked that the matter be discussed at a more convenient time. Tr. at 252–53. Furthermore, plaintiff did not apply for such a position through the established procedures, although she did make her interest in such a position known. Thus, it is not clear that she ever actually applied for or sought the promotion at issue. In any case, plaintiff has failed to establish that her admittedly extensive bookkeeping and accounting clerk experience qualified her for the position of junior accountant. Although there was no dispute that plaintiff assumed responsibilities for additional accounts, such as the marketable securities account and the deposit account, her testimony, as well as that of the management of Ciba-Geigy, demonstrates that the nature of her duties essentially remained the same: bookkeeping, reconciling accounts and other clerical duties. At no time was she given responsibilities for making the judgments basic to the junior accountant position. Tr. at 237, 322, 345. Thus, there is no basis for a claim that plaintiff was adversely affected by the delay in updating her job description or that there was any discriminatory basis for defendant's failure to promote plaintiff to the position of junior accountant.

██ Finally, plaintiff claims that Mr. Damrau's comment that he thought she would be happier elsewhere evidences retaliation. We are somewhat puzzled by this assertion. The challenged remark was made after plaintiff had submitted her letter of resignation by an individual who did not have the direct authority to alter plaintiff's employment status. We have also taken note of the efforts on the part of management to accommodate plaintiff's desire for advancement, such as offering the opportunity to supervise other employees and suggesting that she further her education. Management told plaintiff of its sat-

---

3. During this period, Ciba-Geigy was in the process of implementing the Hay Evaluation System, which was designed to rank jobs in terms of their relative importance, taking into account the degree of know-how, problem-solving skills, responsibility and working conditions. The results of these evaluations were to be used to determine the appropriate title, classification and grade level of a position. During plaintiff's tenure, Ciba-Geigy undertook the evaluation of the positions of exempt employees, *i.e.* all employees exempt from the Fair Labor Standards Act, but not non-exempt employees, which included plaintiff. Subsequently, Hay System was implemented for the non-exempt positions as well. Although plaintiff implies that this delay in evaluation of non-exempt employees was discriminatory in some manner, she has not offered any evidence supporting this implication, or showing how she was adversely affected. Nor has plaintiff demonstrated that the evaluation system itself was discriminatory.

isfaction with her performance, and upon hearing of her resignation, urged her to reconsider her decision, as a promotion was possible in the near future. Thus, there is no support in the record for a finding that defendant constructively discharged plaintiff by creating intolerable working conditions, or in any way retaliated against her for her complaints concerning employment discrimination or her meetings with management.

We conclude that plaintiff has failed to prove her claims of discrimination or retaliation. Accordingly, the complaint is dismissed.

SO ORDERED.