Curtis WRENN, Plaintiff,

v.

NEW YORK CITY HEALTH AND HOSPITALS CORPORATION and Stanley Brezenoff, Individually and as President, New York City Health and Hospitals Corporation, Defendants.

No. 82 CIV. 6363 (PKL).

United States District Court, S.D. New York.

June 25, 1987.

---

Paulette M. Owens, New York City, for plaintiff.

Peter Zimroth, Corp. Counsel, New York City; Terrence R. Real, of counsel, for defendants.

LEISURE, District Judge:

Defendants have moved for summary judgment in this employment discrimination action. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* — U.S. —, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence ... is so one-sided that one party must prevail as a matter of law." *Id.* at 2512. *See also Celotex Corp. v. Catrett,* — U.S. —, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). " 'On summary judgment the inferences to be drawn from the

underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986) (citation omitted). Where, however, "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Id.* at 1356 (citation omitted). Fed.R.Civ.P. 56(e) requires the party opposing the motion to "present some evidence which supports the bald assertion that there is a dispute." *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir.1972). "A party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial, for in doing so he risks the possibility that there will be no trial." *Id., quoted in Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

### *Factual Backround*

The following recitation is drawn from the statements of the parties pursuant to Civil Rule 3(g) of the Southern District of New York,[1] the deposition of the plaintiff, and the other exhibits submitted by the parties. The Court concludes that there is no genuine issue as to any material fact. *See* Fed.R.Civ.P. 56(c). *See also Murray v. Xerox Corp.*, 811 F.2d 118, 123 (2d Cir. 1987).

Defendant New York City Health and Hospitals Corporation (HHC) is a "body corporate and politic constituting a public benefit corporation" under the laws of the State of New York. Defendant Stanley Brezenoff served as the President of HHC from March 1981 to January 1984.

Plaintiff Curtis Wrenn applied for the position of executive director of Metropolitan Hospital on November 24, 1980. He was not interviewed for the position. Subsequently, he was informed that he had not been selected. On March 21, 1981, plaintiff filed a charge of race discrimination (Charge # 021–81–2262) with the Equal Employment Opportunity Commission (EEOC) concerning the rejection of his application for the position of executive director at Metropolitan Hospital. Plaintiff also applied, but was not hired, for 14 other executive-level positions at HHC facilities. These 14 positions, and the dates on which plaintiff submitted his applications, are as follows: Harlem Hospital, executive director, January 12, 1981; Queens Hospital, associate executive director for professional services, September 26, 1981; Elmhurst, associate executive director, November 22, 1981; Neighborhood Family Care Center, administrator, August 24, 1981; Coney Island Hospital, associate executive director, January 10, 1982; Elmhurst, executive director, June 28, 1981; Elmhurst, associate administrator of support services, September 9, 1981; North Central Bronx Hospital, deputy executive director, February 15, 1981; HHC, executive vice president of operations, April 27, 1981; HHC, executive director/hospital administrators (five positions), April 27, 1981.

Plaintiff's applications for all of these jobs, with the exception of the executive director's position at Harlem Hospital, were made and processed in the same fashion. Plaintiff submitted an application for the position in response to an advertisement appearing in a newspaper or periodical. He subsequently received a letter of rejection without an interview, face-to-face communication, or other contact from the people involved in the selection process. The letter rejecting plaintiff's application for the Metropolitan Hospital position was signed by Brezenoff. None of the other rejection letters produced by plaintiff were signed by Brezenoff, however.

Brezenoff served as chairperson of the Metropolitan Hospital Search Committee for a permanent executive director and,

---

**1.** Plaintiff's counsel filed a "statement of Material facts as to which there is no Genuine issue to be tried, in opposition to defendants [sic] motion for Summary judgment." Of course, Rule 3(g) requires the party opposing a motion for summary judgment to submit a "statement of the material facts as to which it is contended that there exists a genuine issue to be tried." To the extent possible, the Court has treated plaintiff's submission as an attempt to fulfill the requirement of Rule 3(g).

beginning in March 1981, acted as HHC president. Approximately 120 persons, including plaintiff, applied for the position of executive director by submitting resumes to the search committee. Plaintiff's resume did not contain a photograph, nor did it identify his race. Most of the applicants, including plaintiff, were rejected solely on the basis of their resumes.

Brezenoff, as HHC president, selected a Hispanic male for the position of executive director at Metropolitan Hospital, which is located in East Harlem and serves a largely Spanish-speaking community. This person is bilingual in English and Spanish and had served as acting executive director before receiving the permanent appointment. The successful applicant had already proven that he was capable of leading the hospital during a difficult transition period.

For the executive director's position at Harlem Hospital, plaintiff and two other black males were recommended to Brezenoff by the Harlem Hospital Search Committee. On the recommendation of the search committee, plaintiff received an interview with Brezenoff. Brezenoff finally selected a fourth candidate, also a black male, who had not been recommended by the search committee. The successful candidate had three years of experience as chief executive officer at HHC's Sydenham Hospital and nine years of experience in executive-level positions at HHC's Bellevue Hospital. In his deposition, plaintiff stated that he did not know whether Brezenoff was aware of plaintiff's prior EEOC complaint concerning the Metropolitan Hospital position when Brezenoff made his decision regarding the Harlem Hospital position. *See* Transcript of Excerpts from Deposition of Curtis Wrenn ("Plaintiff's Deposition") at 60–61.

Neither Brezenoff nor his personal staff had any involvement in screening resumes or selecting applicants to be interviewed for the following seven HHC positions:

Queens Hospital, associate executive director for professional services; Elmhurst, associate executive director; Neighborhood Family Care Center, administrator; Coney Island Hospital, associate executive director; Elmhurst, executive director; Elmhurst, associate administrator of support services; and North Central Bronx Hospital, deputy executive director.

In addition, neither Brezenoff nor his personal staff had any involvement in screening resumes or selecting applicants for interviews for the following six positions: HHC, executive vice president of operations; and HHC, executive director/hospital administrator (five positions). Plaintiff submitted his resume for these positions in response to an advertisement that appeared in the New York Times on or about April 26, 1981. It directed applicants to submit their resumes for these positions to the office of the HHC Chairman. As HHC President, Brezenoff did not receive or screen any resumes submitted in response to the advertisement.[2]

Plaintiff was issued an EEOC right-to-sue letter on his charge concerning his application for the position of executive director at Metropolitan Hospital. Plaintiff has not produced any other EEOC right-to-sue letters involving the rejections of his 14 other applications for HHC executive-level positions.

By opinion dated February 19, 1986, this Court denied defendants' motion for partial summary judgment.

### (1) Title VII Claims

Plaintiff alleges violations of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* In denying defendants' prior motion for summary judgment, the Court limited plaintiff's Title VII claims to the allegations that plaintiff was denied the position of executive director at Metropolitan Hospital on the

---

**2.** Counsel for plaintiff states, "The fact as to whether Brezenoff or his personal staff had an involvement in an 'informal' screening process as it relates to plaintiff Curtis Wrenn is a critically contested issue of fact." Plaintiff's 3(g) Statement at ¶ 14. Plaintiff has failed, however, to produce even a shred of evidence to support the allegation that such an " 'informal' screening process" existed, let alone that Brezenoff participated in it with regard to any of plaintiff's applications.

grounds of race discrimination and that he was denied 14 other executive-level positions at HHC in retaliation by Brezenoff for plaintiff's filing an EEOC complaint concerning his Metropolitan Hospital rejection.[3]

For purposes of the instant motion, defendants assume that plaintiff met his burden of establishing a *prima facie* case.[4] Accordingly, defendants have the burden of producing evidence that plaintiff was rejected for a "legitimate, nondiscriminatory" reason. *See Dacon,* 759 F.2d at 996–97; *Davis v. State University of New York,* 802 F.2d 638, 641 (2d Cir.1986). "Once the employer establishes a legitimate, nondiscriminatory motive, the presumption of retaliation drops from the case and the employee must demonstrate that the stated reasons were pretextual." *Davis,* 802 F.2d at 642 (citing *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 255 & n. 10, 256, 101 S.Ct. 1089, 1094, 1095 n. 10, 67 L.Ed.2d 207 (1981)).[5] "The ultimate burden of persuasion remains at all times with the" plaintiff. *Davis,* 802 F.2d at 641. *See also Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.

With regard to the Metropolitan Hospital position, the Court finds that defendants had legitimate, non-discriminatory reasons for their rejection of plaintiff's application. Defendants selected an applicant who was uniquely qualified for the job. *See* Affidavit of Stanley Brezenoff, sworn to on June 9, 1986, at ¶¶ 5–6, and Exh. B annexed thereto. Moreover, it is well-established that an employer need not prove that the person selected "had superior objective qualifications, or that it made the wisest choice, but only that the reasons for the decision were nondiscriminatory." *Davis,* 802 F.2d at 641. *See also Burdine,* 450 U.S. at 259, 101 S.Ct. at 1096.

Since defendants showed a legitimate, nondiscriminatory reason for rejecting plaintiff's application to Metropolitan Hospital, plaintiff has the burden of demonstrating "that the articulated reason is a pretext." *Davis,* 802 F.2d at 641. *See also Zahorik v. Cornell University,* 729 F.2d 85, 91–92 (2d Cir.1984). Plaintiff, however, has failed to produce evidence that defendants' asserted explanation is a pretext for discrimination on the basis of race. *See Dacon,* 759 F.2d at 998 ("purely conclusory allegations of discrimination, absent any concrete particulars," held insufficient to defeat summary judgment motion). As defendants have noted, plaintiff's "factual allegations to support his claim consist of nothing more than his claim that he submitted his resume for the position and, without an interview or any other communication or face-to-face contact, he received a rejection letter from Brezenoff." Defendants' Memorandum of Law at 18. *See also* Plaintiff's Deposition at 53. Plaintiff has conceded that he did not know: the number of applicants for the executive director's position at Metropolitan Hospital; their ethnic breakdown; their qualifications; the operation of the selection process; and the number, identity, or qualifications of applicants selected for interviews. Plaintiff's Deposition at 63–64. Nor has plaintiff come forward with any such information in response to defendants' motion.[6]

---

**3.** As already noted, plaintiff failed to produce right-to-sue letters for any of the rejections of his applications other than that for Metropolitan Hospital. *See supra* p. 776. Plaintiff has not disputed defendants' position that this Court's prior opinion implicitly limited his claims as described above. *See* Defendants' Memorandum of Law at 17–18.

**4.** *See Dacon,* 759 F.2d at 994 (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The order of proof in a retaliation case follows the *McDonnell Douglas* standard. *Davis v. State University of New York,* 802 F.2d 638, 642 (2d Cir.1986).

On their motion to dismiss plaintiff's retaliation claims, other than the count involving Harlem Hospital, defendants do not assume that plaintiff has established a *prima facie* case. *See infra* at pp. 778–779.

**5.** A plaintiff can demonstrate pretext by showing "that a discriminatory reason more likely motivated the employer" or "that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

**6.** In his response to defendants' motion, plaintiff has not requested an additional opportunity for discovery pursuant to Fed.R.Civ.P. 56(f). Plaintiff has stated that he "should be allowed to

■ With regard to Harlem Hospital, plaintiff alleges that Brezenoff rejected his application for the executive director's position in retaliation for plaintiff's EEOC complaint. The relevant issue is not whether defendants exercised good judgment in failing to hire plaintiff, but whether plaintiff's rejection was caused in part by retaliatory animus. *See, e.g., Francoeur v. Corroon & Black Co.,* 552 F.Supp. 403, 411 (S.D.N.Y.1982) (requiring causal relation); *Ferrara v. Ciba-Geigy Corp.,* 548 F.Supp. 703, 706 (S.D.N.Y.1981) (same), *aff'd,* 697 F.2d 290 (1982). The Court finds that defendants had legitimate, nonretaliatory and nondiscriminatory reasons for not selecting plaintiff. The successful candidate for the Harlem Hospital position, who is black, had more extensive experience in hospital management than plaintiff. His experience included three years as chief executive officer at one HHC hospital and nine years in executive-level positions at another. Unlike plaintiff, he had familiarity with the HHC system and a proven record of success in HHC facilities.

Plaintiff has not produced even a scintilla of evidence to show that defendants' asserted reasons with regard to the Harlem Hospital position are mere pretexts. At his deposition, plaintiff acknowledged, for example, that he did not know anything about the other two candidates recommended to Brezenoff by the Harlem Hospital Search Committee. Plaintiff's Deposition at 46. Although he claimed that the interview process was a "smokescreen," plaintiff conceded that he had no information to support this claim. *Id.* at 47–48. Nor has plaintiff produced any such information in response to defendants' motion for summary judgment.

■ Plaintiff also alleges that he was denied 13 other executive-level postions at HHC in retaliation by Brezenoff for plaintiff's EEOC complaint. As to these positions, plaintiff was rejected on the basis of his resume. He had no contact with HHC personnel other than the rejection letters that he received after he submitted his applications. Plaintiff's Deposition at 62. Brezenoff states unequivocally that neither he nor his personal staff had any involvement in reviewing the resumes submitted for these 13 positions or in selecting applicants who would be granted interviews. Brezenoff Affidavit at ¶ 11. Plaintiff has not pointed to any fact which contradicts Brezenoff's account.[7]

With regard to seven of the positions[8], the duties of screening resumes and selecting applicants for interviews were carried out either by executives at the individual

---

secure expert testimony with respect to the career ladder development in the Administrative Health care area." Plaintiff's Memorandum of Law at 10. Plaintiff has not, however, explained how such testimony would create a genuine issue for trial. Accordingly, there is no basis for holding the summary judgment motion in abeyance.

The finding by the EEOC that there was "reasonable cause" to believe that plaintiff was discriminated against in regard to the position at Metropolitan Hospital is not binding on a federal district court. *See, e.g., Philbrook v. Ansonia Board of Education,* 757 F.2d 476, 481 (2d Cir. 1985), *aff'd,* —— U.S. ——, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986); *Hilton v. Wyman-Gordon Co.,* 624 F.2d 379, 383 (1st Cir.1980); *Smith v. Universal Services,* 454 F.2d 154, 157 (5th Cir. 1972). In this case, the EEOC finding is entitled to little weight since it is clear that the commission did not review the qualifications of the successful candidate and did not compare the successful applicant to the plaintiff. *See* Plaintiff's Exh. 7, annexed to Plaintiff's Memorandum of Law. The EEOC concluded merely that defendants' claim that plaintiff lacked previous top management experience in a multi-level acute care institution was unfounded. *Id.* at 2.

7. The bald allegation of counsel for plaintiff that a triable issue of fact exists over whether Brezenoff did or did not review the resumes or participate in the selection of applicants for the 13 remaining positions, Plaintiff's Memorandum of Law at 6–9, is a deficient response to a summary judgment motion. *See Dacon,* 759 F.2d at 997–98. Counsel has pointed to no fact, documentation or other proof to support an inference contradicting Brezenoff's account of his lack of involvement.

8. These positions were: Queens Hospital, associate executive director for professional services; Elmhurst, associate executive director; Neighborhood Family Care Center, administrator; Coney Island Hospital, associate executive director; Elmhurst, executive director; Elmhurst, associate administrator for support services; and North Central Bronx Hospital, deputy executive director. *See* Defendants' 3(g) Statement at ¶ 13.

hospitals or by *ad hoc* search committees. As to the other six positions[9], applicants were directed by a newspaper advertisement to submit their resumes to the office of the HHC Chairman, not to Brezenoff's office. In sum, plaintiff has failed to demonstrate any factual basis for his claims of retaliation as to the 13 remaining positions at issue. *See, e.g., Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980) (retaliatory motive must be shown to have "play[ed] a part in the adverse employment actions").

Accordingly, plaintiff's Title VII claims are hereby dismissed.

### (2) Title VI Claims

Section 601 of Title VI of the Civil Rights Act of 1964 provides that "no person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d (1976). Section 604 provides, however, that nothing in Title VI "shall be construed to authorize action ... by any department or agency with respect to any employment practice of any employer ... except where a primary objective of the Federal financial assistance is to provide employment." 42 U.S.C. § 2000d-3. The Court of Appeals for the Second Circuit has held that even for private plaintiffs under Title VI, "a threshold requirement is that the employer be the recipient of federal funds aimed primarily at providing employment." *Association Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir.1981), *cert. denied*, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982).

█ Plaintiff has neither alleged nor demonstrated that HHC has received federal funds aimed primarily at providing employment in the 15 positions at issue.[10] In fact, HHC received no federal financial as-

sistance to fund the 15 executive-level positions listed in plaintiff's complaint. *See* Affidavit of John Linville, Esq., sworn to on June 5, 1986, at ¶ 4. Accordingly, plaintiff's claims under Title VI are hereby dismissed.

### (3) Section 1981 and 1983 Claims

In order to prevail on employment discrimination claims under 42 U.S.C. §§ 1981 and 1983, a plaintiff must prove that defendants intentionally discriminated against him on the basis of his race. *See General Building Contractors Association v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); *Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976); *Krulik v. Board of Education of City of New York*, 781 F.2d 15, 23 (2d Cir.1986). As explained previously, plaintiff has failed to come forth with any factual basis for his claims of race discrimination.

█ Plaintiff has relied solely on conclusory allegations unsupported by any relevant documentation. As defendants have noted, plaintiff's deposition testimony demonstrates that he has no basis for his charges of intentional discrimination. Defendants' Memorandum of Law at 32. *See, e.g.*, Plaintiff's Deposition at 45–47, 52–53, 61–64. Plaintiff admitted that, with regard to the positions for which he was rejected, he did not know: the number of applicants, their ethnic backrounds, or qualifications; the operational details of the selection process; the number of applicants selected for interviews; and the ethnic backrounds and qualifications of applicants selected for interviews. Moreover, plaintiff has not produced any such information in response to the instant motion. With regard to his application for the Harlem Hospital posi-

---

**9.** These positions were: HHC, executive vice president for operations; HHC, executive director/hospital administrator (five positions). *See* Defendants' 3(g) Statement at ¶ 14.

**10.** Plaintiff did not address this issue in his papers responding to the motion for summary judgment.

tion, plaintiff could not even recall the substance of his interview with Brezenoff. Plaintiff's Deposition at 43–44. Perhaps most significantly, plaintiff has admitted that he made 14 of his applications simply by submitting resumes in response to advertisements, and that he received rejections without an interview or any other written, verbal, or personal contact with selection committee members. Since plaintiff's resume did not contain a photograph and did not indicate his race, there is no evidence that anyone reviewing plaintiff's applications for these 14 positions was even aware that plaintiff is black.

"The granting of summary is not precluded by plaintiff's conclusory opinion, however sincere, that he was the victim of racial discrimination." *Warren v. Quality Care Service Corp.*, 603 F.Supp. 1174, 1181 (W.D.N.Y.1985). *See, e.g.*, Plaintiff's Deposition at 48. Further, the bare facts that plaintiff is black and that defendants failed to hire him does not justify an inference that the defendants' conduct was racially motivated. *Gatling v. Atlantic Richfield Co.*, 577 F.2d 185, 188 (2d Cir.) (citing *Herrmann v. Moore*, 576 F.2d 453, 457 (2d Cir.), *cert. denied*, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978)), *cert. denied*, 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 169 (1978). *Accord Fraser v. Doubleday & Co.*, 587 F.Supp. 1284, 1287 (S.D.N.Y.1984).

Accordingly, plaintiffs claims under §§ 1981 and 1983 are hereby dismissed.

*Plaintiff's Motion for Sanctions*

Plaintiff has moved, pursuant to Fed.R.Civ.P. 11 for an award of sanctions. Plaintiff seeks to recover attorney's fees and costs incurred in opposing defendants' previous motion for partial summary judgment, which was denied in an opinion dated February 19, 1986. Plaintiff has failed to state any ground whatsoever for an award under Rule 11. The memorandum of law submitted by counsel for plaintiff is devoted instead to a discussion of the appropriate hourly rate for calculation of such an award. Moreover, a review of defendants' partial summary judgment motion indicates that there is no basis for a Rule 11 award.

Accordingly, plaintiff's motion for fees and costs is hereby denied.

SO ORDERED.