**Priscilla GIBBS, Plaintiff,**

v.

**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Defendant.**

**No. 87 CIV. 6960 (SWK).**

United States District Court,
S.D. New York.

May 31, 1989.

---

Clifton & Schwartz, New York City by Arthur Z. Schwartz, for plaintiff.

Consolidated Edison Co. of New York, Inc., New York City by Charles E. McTiernan, Jr., for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff brings suit pursuant to 42 U.S. C. § 1981 and § 296 of New York's Human Rights Law for alleged discrimination based on race and national origin. Plaintiff claims defendant has denied her a promotion, despite her qualifications, even though the person she replaced, who was white, performed the same responsibilities with a higher title and more pay. Defen-

dant has moved for summary judgment pursuant to Fed.R.Civ.P. 56 on the basis that the person who made the employment decision acted in accordance with a standing policy not to promote persons who were not within 25 cents of the maximum pay under the applicable collective bargaining agreement for their job title. Plaintiff argues that this explanation is pretextual, and that issues of fact remained to be resolved precluding the grant of summary judgment.

## BACKGROUND

The collective bargaining agreement between Con Edison and Local 1–2, Utility Workers Union of America, establishes a "promotional program" through which an employee may progress. In the clerical family of jobs, the lowest position is that of Clerk B, followed by Clerk A or Clerk, then Senior Clerk, then Coordinator or Senior Office Assistant B, and finally Senior Coordinator or Senior Office Assistant A. Each job position has a minimum and maximum pay, and employees move from minimum to maximum in 20 cent increments awarded every four months assuming satisfactory job performance. Employees also automatically receive annual pay increases.

Priscilla Gibbs, a black woman of Puerto Rican descent, began her employment with defendant Consolidated Edison Company of New York, Inc. ("Con Edison") in 1982, when she was hired to perform clerical work in the Gas Operations Department of the Bronx Division at the entry level position of Clerk B. Her starting pay was $4.36 per hour. Gibbs was promoted in late 1984 or early 1985 to the Clerk position, and earned $7.02 an hour. During the first week of February, 1985, plaintiff was asked whether she wanted to fill a position vacated by Ms. Coleen Colaluca in the Personnel and Training Section of Bronx Gas Operations. Ms. Colaluca, who is white, had recently resigned to care for a newly-born child. Colaluca had been promoted to the title of Coordinator in January, 1982, along with a 44 cent pay increase, to reflect the nature of her responsibilities. *See* Affidavit of Priscilla Gibbs at ¶ 6 and Exhibit B thereto. Another white employee, a

Thomas Thurston, performed similar duties and also was promoted to the position of coordinator following an "audit" of his job responsibilities.

Plaintiff's supervisor, Joan Worrell, asked Gibbs whether she wanted to take over Colaluca's job. Frank Matteo, who had supervised Colaluca, also encouraged Gibbs to take the new position. Gibbs states that she was led to believe that she would get the promotion to coordinator if she took the position. Gibbs assumed Colaluca's old position on February 6, 1985, to which other related personnel responsibilities were allegedly added. The Division Manager, Len Libenson, submitted a Preliminary Questionnaire in May, 1985 to the Personnel Department, which is the first step in obtaining a job audit, which is a prerequisite for a promotion. Attached to the questionnaire is a breakdown of the duties performed by Gibbs. These duties encompass those performed by Thurston. It is not disputed that plaintiff performs the same, if not greater, duties than those performed by Colaluca and Thurston, and it is also not disputed that she performs her responsibilities in a very satisfactory manner. Matteo, her current supervisor, has consistently rated her work as superior. Matteo Deposition at 49, attached to Gibbs Affidavit at Exhibit D; *see also* Exhibit I to Gibbs Affidavit (performance evaluations indicating above average performance). After submission of the questionnaire, the Personnel Department prepared a Payroll Change Authorization ("PCA"), which, had it been approved, would have allowed plaintiff's promotion. Both Matteo, and his supervisor, John White, Manager of Operations Support, supported plaintiff's promotion, believed she was not only capable, but also actually performing duties commensurate with the coordinator position based on the audit of Thurston's job. Matteo Deposition at 44–45 and Deposition of John White at 12–13, attached as Exhibit E to Gibbs Affidavit.

Arthur Bennett, Vice President of the Bronx Division since 1983, did not approve the promotion request. Bennett states that he always follows certain guidelines in de-

ciding whether to approve a requested clerical promotion. Based in part on a 1972 memorandum issued by a former Con Edison vice president, *see* Exhibit D to Affidavit of Arthur J. Bennett, Bennett requires that a qualified candidate be reasonably close to the maximum rate of pay, preferably within 25 cents, for his or her current job title. Bennett further states that at the time plaintiff's supervisors requested the promotion for Gibbs, she was earning $8.58 an hour, while the maximum pay for the title "clerk" was $11.68.[1] Bennett stated at his deposition that he denied the promotion for Gibbs and another employee on the grounds that they were too far away from their maximum. Bennett Affidavit at ¶ 10 and Bennett Deposition, attached as Exhibit E, at 11–12. Frank Ciminiello, a supervisor, testified at a deposition that Bennett explained to him that one of the reasons for not promoting Gibbs was the large pay differential between her current position and that of coordinator. Ciminiello Deposition at 6, attached as Exhibit F to Bennett Affidavit. The other reason for not promoting her, according to Ciminiello, concerned the union. Libenson, another supervisor, also testified at a deposition that Bennett explained his refusal to promote Gibbs based on the salary differential. Libenson Deposition at 9, attached as Exhibit G to Bennett Affidavit. At her own deposition, plaintiff states that she was told her application was disapproved by Bennett, and although she could not remember precisely, she believed the reason related to money:

> I don't remember, but I think it is just too much money involved. I was too far away, that is all I ever heard; I was too far away, and I used to tell them that I am always going to be too far away from the money.

Gibbs Deposition at 21, attached as Exhibit K to Bennett Affidavit. Bennett claims he applied his "25 cent rule" or monetary guidelines consistently as a first step before considering promotions in all clerical promotion requests he has handled since becoming vice president. Bennett also

states that he does not believe he was aware that plaintiff is black and of Puerto Rican descent at the time he made the decision not to promote her. Plaintiff filed a grievance with the union after she learned of the denial of her promotion. She continues to work for Con Edison as a clerk.

## DISCUSSION

▮ Under the standard developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), plaintiff has the initial evidentiary burden of establishing by a preponderance of the evidence a prima facie case of discrimination. *Id.* at 802, 93 S.Ct. at 1824; *see Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *Zahorick v. Cornell University,* 729 F.2d 85, 92 (2d Cir.1984). The elements and the allocation of the burdens of proof are the same in Title VII cases and section 1981 cases. *Eshun v. New York State Dept. of Social Services,* 652 F.Supp. 455, 459 (S.D.N.Y.1987). Plaintiff may establish a prima facie case by alleging that (1) she belongs to a racial minority or other protected class; (2) she applied and was qualified for a position for which the employer was seeking applicants; (3) she was rejected despite her qualifications; and (4) the job remained open after she was rejected and the employer continued to seek applications with plaintiff's qualifications. *Ottaviani v. SUNY at New Paltz,* 679 F.Supp. 288, 297–98 (S.D.N.Y.1988) (citing *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824), *aff'd,* 875 F.2d 365 (2d Cir.1989); *Lewis v. New York Telephone Company,* 643 F.Supp. 654, 660 (S.D.N.Y.1984) (section 1981 failure to promote case). Plaintiff, in presenting this evidence, must establish an inference of discrimination. *Zahorick, supra,* 729 F.2d at 92.

▮ Once the plaintiff has established a *prima facie* case, the burden shifts to the defendant-employer to enunciate some legitimate, non-discriminatory reason for the

---

**1.** Plaintiff's Payroll Change Authorization indicates that she was earning $7.22 as a clerk and would be earning $11.53 as a coordinator. Exhibit G to Gibbs Affidavit.

alleged acts of discrimination. *Zahorick, supra,* 729 F.2d at 92 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973)). The employer need not prove by a preponderance of the evidence that the reasons for his action were not discriminatory, but may simply "present clear and specific reasons for the action." *Neale v. Dillon,* 534 F.Supp. 1381, 1387 (E.D.N.Y. 1982) (citing *Texas Dept of Community Affairs v. Burdine,* 450 U.S. 248, 254–58, 101 S.Ct. 1089, 1094–96, 67 L.Ed.2d 207 (1981)), *aff'd mem.,* 714 F.2d 116 (2d Cir. 1982).[2] The employer must present objective evidence in support of its explanation. *Ottaviani, supra,* 679 F.Supp. at 298 (citing *Sweeney v. SUNY Research Foundation,* 711 F.2d 1179, 1185 (2d Cir.1983)).

■ If the employer presents this evidence, the burden then shifts back to the plaintiff who must establish that the employer's stated reasons are merely a pretext for discrimination. *Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 46. The plaintiff may do so by showing that the discriminatory reason suggested by the plaintiff is more likely true or that the reasons given by the defendant are unworthy of belief. *Burdine, supra,* 450 U.S. at 256, 101 S.Ct. at 1095. Proof of pretext may include discriminatory statements or admissions, the mix of the workforce, an atmosphere of discrimination, and the employer's general practices. *Ottaviani, supra,* 679 F.Supp. at 298 (citing *Penk v. Oregon State Bd. of Higher Educ.,* 816 F.2d 458, 462–63 (9th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 158, 98 L.Ed.2d 113 (1987)). The ultimate burden of persuasion remains with the plaintiff throughout the

case. *Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093; *Wrenn v. New York City Health and Hospitals Corp.,* 664 F.Supp. 773, 777 (S.D.N.Y.1987) (citing *Davis v. State University of New York,* 802 F.2d 638, 641 (2d Cir.1986)).

■ Defendant does not strongly contest that plaintiff has established a prima facie case. Plaintiff's color and national background satisfy the first prong, that she belong to a protected class. Plaintiff has satisfied the second and third prongs by showing that she applied for the promotion and was denied the promotion even though she is qualified for the position and the raise. The last prong of the prima facie case, that the position remain open, does not apply to the facts of this case, since plaintiff actually took the position and only claims she was denied the concomitant pay raise and title for discriminatory reasons. The circumstances clearly create an inference of discrimination. The Court concludes that plaintiff has established a prima facie case of discrimination.

■ Defendant, as its legitimate, non-discriminatory reason for not promoting plaintiff, explains that she was not given the higher title and salary because she was too far from the maximum salary level for her current job. Plaintiff argues that this explanation is not worthy of belief for a number of reasons. First, plaintiff argues that Bennett's explanation of his actions is suspect because he never explained to plaintiff, White or Matteo that he denied the promotion because of his "25 cent rule" or other monetary considerations. Gibbs states that the first time she learned of this

**2.** In a recent plurality opinion, Justice Brennan wrote for the Supreme Court that an employer has the burden of proving by a preponderance of the evidence in a mixed-motive case that the employer would have made the same employment decision absent the discriminatory factors upon which the employer relied. *Price Waterhouse v. Hopkins,* — U.S. ——, 109 S.Ct. 1775, 1785, 104 L.Ed.2d 268 (1989); *see also id.* at 1790 ("the plaintiff who shows that an impermissible motive played a motivating part in an adverse employment decision has thereby placed upon the defendant the burden to show that it would have made the same decision in the absence of the unlawful motive."). The decision does not affect the employer's burden of production in response to a prima facie *pretext* case. *Id.* at —— n. 12, 109 S.Ct. at 1789 n. 12 ("If the plaintiff fails to satisfy the factfinder that it is more likely than not that a forbidden characteristic played a part in the employment decision, then she may prevail only if she proves, following *Burdine,* that the employer's stated reason for its decision is pretextual."). Since the present case does not involve alleged mixed motives, but has instead been argued as a pretext case, the *Price Waterhouse* decision does not apply.

proffered reason was at Bennett's deposition.

The evidence in this case belies plaintiff's argument. A number of Con Edison officials testified at their depositions that they had heard of Bennett's promotion policy. Both Ciminiello and Libenson stated that Bennett had explained to them that he did not approve of Gibbs's promotion because she was too far away from her maximum salary level. At her own deposition, which took place on December 29, 1987, Gibbs stated that she had heard that her promotion request had been denied because it involved too much money, thus contradicting her assertion that she did not learn of this reason until Bennett's deposition, which took place on May 12, 1988.

Plaintiff stresses, however, that her immediate supervisor, Matteo, and his immediate supervisor, White, had not been told that Bennett denied her promotion based on the 25 cent rule. Whether or not Matteo or White knew of the 25 cent rule or heard that Gibbs had not been promoted because of monetary guidelines, others at Con Edison knew of Bennett's monetary concerns and strict policy. The fact that Matteo and White were not told the specific reason for the denial of plaintiff's promotion does not, in the context of the evidence here, suggest either that the 25 cent rule policy did not exist or that Bennett did not in fact apply it to plaintiff. The Court does not find Matteo's and White's statements in their depositions that they were not given reasons for Bennett's decision as evidence that Bennett did not base his promotion decision on his monetary guidelines. Matteo stated that Libenson had not told him why Bennett was holding up the promotion. Matteo Deposition at 48. Similarly, White stated that he had not heard, presumably from Libenson or Ciminiello, why Bennett turned down the promotion. White Deposition at 10. The fact that they were not told does not suggest that Bennett did not base his decision on monetary considerations.

In a reply affidavit, White states that he and Matteo do not report directly to Bennett, that it would be unusual for them to have direct contact with Bennett, and even more unusual to be told by him the reasons for a personnel decision. White Reply Affidavit at ¶ 3. White also notes that neither he nor Matteo presented the promotion request to Bennett; instead, upper management, namely Libenson and Ciminiello, had that responsibility. *Id.* at ¶ 4. Both of these men confirmed that Bennett explained that the promotion was denied because plaintiff was too far away from her maximum salary level. The Court does not believe that this first pretext argument given by plaintiff raises any genuine issues of material fact for trial and does not suggest that Bennett's explanation is not worthy of belief.

Plaintiff next argues that Bennett's explanation is not believable because Patrick J. Bencivengo, a Local 1–2 Business Agent, also never heard of a 25 cent rule, because Bennett never told him that the promotion was denied because of such a rule and because Bencivengo was only told that Bennett and the Director of Industrial Relations decided that a job audit was not necessary. While Bencivengo testified to this effect, his testimony taken as a whole does not support plaintiff's position. Bencivengo admitted at his deposition that Bennett may have told him that Gibbs was not promoted because of financial considerations. Bencivengo Deposition at 37, attached as Exhibit J to Gibbs Affidavit. Bencivengo claimed he knew that Bennett "feels very strong on money ...", but that Bennett had never specifically mentioned a 25 cent rule. Bencivengo admitted that he had heard of the 25 cent rule, explained that it involved an employee being "more than 25 cents from the max of the title that they are at", and then strenuously objected that the so-called rule was not an official rule that had been negotiated between the union and the company. Bencivengo Deposition at 38. He said:

> You're saying there is a rule, (sic) I don't know where you're coming from with this rule. There is nothing in the contract book that says you have to be within 25 cents before you can obtain the next title. There is some people in management that might like to think

that. We know that there are people who got a lot more than 25 cents an hour raise.

*Id.* at 38–9. This testimony does not support plaintiff's position; Bencivengo knew the so-called rule existed, contended that it was not part of the collective bargaining agreement, and simply did not know whether Bennett applied the rule. The fact that he did know does not mean or suggest, and nor could reasonably infer given the other evidence, that the 25 cent rule did not exist and was not applied by Bennett in this case. Again, the Court concludes that plaintiff has not raised genuine issues of material fact.

In a supplemental submission, plaintiff has presented the testimony of John Tully, who became General Manager for Electric Operations in the Bronx division in 1983, from an unrelated action. Tully apparently reports directly to Bennett. At the trial, Tully stated that an employee could get a promotion in the Bronx division even if the employee was not within 25 cents of the maximum salary. Trial Transcript ("Tr.") at 492, *Crimmins v. Consolidated Edison Co. of New York,* No. 87 Civ. 6971 (RBP) (S.D.N.Y. January 25–30, 1989). In response to a question from the Court, Tully stated that he believed the 25–cent rule had not been applied for some twenty years, noting that he has "not been involved in that." Tr. at 493. In an affidavit, Tully states that only one clerical employee has received a promotion in his organization since he joined the division in 1983, and that person was within 25 cents of her maximum pay. Tully Reply Affidavit at ¶ 3. Although plaintiff argues that Tully's testimony casts serious doubts on Bennett's asserted reliance on the 25–cent rule, the Court disagrees. Other responsible persons within the Bronx division and elsewhere have stated that they know the 25–cent rule still exists and that Bennett applied it in this case. As will be discussed below, plaintiff has not rebutted defendant's contention that Bennett has never promoted any clerical employees who were not within 25 cents of their maximum pay scale. The fact that some people, even those in higher management like Tully, did not know Bennett used monetary guidelines does not rebut the evidence that he did use such guidelines. The picture would look quite different if no one, as plaintiff argues in her opposition papers, knew of the 25–cent rule's continued use by Bennett. The record indicates, however, that some people were aware of the 25–cent rule, and that others were not. This latter fact does not undermine the former, nor would it cause the reasonable juror to suspect that Bennett's explanation for his action are not worthy of belief.

Plaintiff's third attack on Bennett's explanation stems from a hypothetical presented to Ross Rimicci, then Manager of Labor Relations. The hypothetical outlined plaintiff's specific circumstances. Rimicci Deposition at 14, attached as Exhibit L to Gibbs Affidavit.[3] At first, Rimicci stated that based on his experience the 25–cent rule would be used as a guide in such a case. Rimicci then concluded that the 25–cent rule would not apply in this situation because "you are bound by the terms of the contract [i.e., the collective bargaining agreement], to follow the promotional language in the contract, and you have to follow that in selecting the employee for the job." Rimicci Deposition at 15. He believed that the selected employee should receive the minimum salary level for the particular job she was assuming, whether or not the employee's salary would increase by more than 25 cents. *Id.* Rimicci acknowledged that the 25–cent rule was still used in the Bronx, but believed that the collective bargaining agreement required the award of a higher salary and

---

**3.** At the deposition, plaintiff's counsel asked the following questions:

Q. I am going to give you a particular example. Employee B's job opens up. Somebody leaves on maternity leave and doesn't come back; the job opens up. They have to fill the job on a permanent basis, not temporary?

A. Right.

Q. Employee B gets chosen. Employee B happens to be a Clerk B and they move into this new job which has more responsibilities than the job that Employee B had before. Does the twenty-five cents rule apply in that circumstance?

title. At another point, Rimicci testified that he knew that Bennett continued to apply the 25–cent rule and would possibly apply the rule to the situation in which a person of a lower title fills a vacancy created by the resignation of a person with a higher title. Rimicci Deposition at 28, attached as Exhibit A to Reply Affidavit of Brian E. Cray. The Court says "possibly", because Rimicci later says that if the duties remained the same, the job title should remain the same and the contract would require the new person to receive the same title and salary as the old person.

While the confusion concerning the theoretical applicability of the 25–cent rule to this particular case may create a genuine issue, the Court believes the facts are not material. Rimicci's testimony suggests that the 25–cent rule as applied by Bennett violates the terms of the collective bargaining agreement. It does not in any way suggest that Bennett did not in fact make the decision not to promote Gibbs for the reasons he has given or for any discriminatory reason based on her race or national origin. This Court has repeated that the "employer's [employment] practices need not be 'rational, wise, or well-considered—only ... nondiscriminatory.'" *Ottaviani, supra,* 679 F.Supp. at 298 (quoting *Powell v. Syracuse University,* 580 F.2d 1150, 1157 (2d Cir.), *cert. denied,* 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978)). While Bennett's actions may violate the collective bargaining agreement and may treat plaintiff in an unfair manner, nothing before the Court indicates that race or national origin had anything to do with the decision not to promote Gibbs.

By the same token, a contract violation standing alone does not indicate racial animus, motive or intent. Plaintiff retains the ultimate burden of proving discriminatory intent. *Richards v. New York Bd. of Educ.,* 668 F.Supp. 259, 264 (S.D.N.Y.1987), *aff'd mem.,* 842 F.2d 1288 (2d Cir.1988). Although summary judgment is not often appropriate when state of mind is at issue, plaintiff has not offered any evidence that creates a genuine issue as to Bennett's intent or state of mind with respect to the discrimination prohibited by section 1981.

*See Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988) (although state of mind is at issue, summary judgment may be awarded in discrimination cases if plaintiff fails to offer "concrete evidence from which a reasonable juror could return a verdict in his favor") (citations omitted). The Court concludes that plaintiff has not submitted evidence to the Court on the issue of pretext that creates any genuine issues of material fact.

Plaintiff also argues that Bennett's explanation is not worthy of belief because a number of PCA's indicate that a number of clerical employees received promotions in salary in excess of 25 cents. *See* Exhibit M to Gibbs Affidavit. Plaintiff also points out that a number of General Typists were promoted to the Clerk A title in 1984 and 1985 and received salary increases in excess of $3.00 an hour. *See* Exhibit N to Gibbs Affidavit. These documents do not suggest that Bennett's explanation is not worthy of belief. As to the latter set of PCA's attached as exhibit N, each of them involves a promotion in the Indian Point division, and not the Bronx. As a preliminary matter, whether or not the Indian Point division applied the 25–cent rule is not relevant to whether or not Bennett applied that rule in the Bronx division. Equally important, Rimicci stated that Indian Point did not follow the 25–cent rule. Rimicci Deposition at 23.

As to the PCA's attached as exhibit M, only two indicate that the employees were in the Bronx division. These two employees, John Shea and Jose Orenga, received their more–than–25–cent promotions in 1982 and 1981, respectively, before Bennett became vice-president of the Bronx division in 1983. Some of the other PCA's indicate that the employees worked in other divisions and some of the PCA's are silent as to the relevant division. None of the PCA's appear to be signed by Bennett, and he has denied making any such promotions. A number of the PCA's do not indicate whether or not they were ever approved. In addition, John Stack, the Division Manager of Personnel and Administration for the Bronx division, states that his records

indicate that Bennett has not promoted any clerical employees who were not within 25 cents of their maximum scale pay. Stack contends that Bennett has promoted twenty clerical employees since he became vice-president.[4] Stack Reply Affidavit at ¶ 3. Of these twenty, a group including eight blacks, five Hispanics and seven non-Hispanic whites, eighteen were within 25 cents of their maximum rate of pay. The other two, a black female and an Hispanic female, were promoted as part of a company-wide arbitration settlement. *Id.* He also indicates that Bennett refused to promote whites until their salaries fell within 25 cents of their maximum. *Id.* ¶ 4. Finally, Stack notes that Colaluca, who received a 44 cent raise when she was promoted into the position plaintiff now holds, was promoted before Bennett arrived. *Id.* at ¶ 5. The fact that some employees at Con Edison received promotions of more than 25 cents in salary does not prove that Bennett (1) promoted employees who were not within 25 cents of their maximum, or (2) discriminated against Gibbs based on her race or national origin.

Finally, plaintiff submits a Job Audit Memo, attached as Exhibit O to the Gibbs Affidavit, which states that an audit is necessary before granting a promotion to a clerical employee that results in a $1.00 or higher wage increase. Plaintiff infers from this document that the 25–cent rule does not apply and that salary increases in excess of $1.00 routinely occur. The record clearly indicates that the 25–cent rule does not apply company-wide, but is used by certain managers in certain divisions only, and that promotions resulting in salary increases of $1.00 or more do occur. Neither of these facts, as stated before, suggest that (1) the 25–cent rule is no longer used in the Bronx division or (2) Bennett did not apply the 25–cent rule to Gibbs in a non-discriminatory manner. Plaintiff's evidence simply does not rebut defendant's and no genuine issues of material fact exist.

Summary judgment in favor of defendant is appropriate under these circumstances; defendant has presented non-discriminatory reasons for denying plaintiff the promotion, and plaintiff has not presented evidence such that a jury could find that she has rebutted this proffer or established the necessary discriminatory intent by a preponderance of the evidence. *See Dister, supra,* 859 F.2d at 1115 ("plaintiff's burden at trial would be to prove by a preponderance of evidence that the reasons advanced are simply a pretext for discrimination."). Whether or not Bennett's decision treats plaintiff fairly, was wise or even consistent with the collective bargaining agreement is not relevant, absent some indication that plaintiff's race or national origin had anything to do with the employment decision or, at the very least, that Bennett treated plaintiff differently than he treated all other similarly-situated employees. Nothing in the record indicates discriminatory animus and plaintiff's evidence has not placed any of the material issues, those concerning defendant's proffered non-discriminatory reasons for the promotion denial, into genuine dispute.

## CONCLUSION

For the reasons stated above, the Court grants defendant's motion for summary judgment. The complaint is dismissed.

SO ORDERED.

---

**4.** In his first affidavit, Stack indicated that Bennett had promoted thirty-four employees. In his reply affidavit, he states that the original list included employees whose titles changed because of demotions and another employee who did not work in the Bronx division. He also states that each of the twenty names on the second list were on the first list of thirty-four.